IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROSA ESPINOZA, et al.,                )
                                       )
        Plaintiffs,                    )   No. 15 C 8108
    v.                                 )
                                       )   Judge Virginia M. Kendall
SGT. SEAN TALBOT, et al.               )
                                       )
        Defendants.                    )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Rosa Espinoza ("Rosa"),[1] Erika Espinoza ("Erika") and Ricardo Espinoza ("Ricardo"), through their counsel, filed suit against Defendant Officers Richard Burdett, Joseph Cassidy, Jason O'Hara, Joseph Gruben, Ken Kiklas, Antonio Tucker and Sergeant Sean Talbot (collectively "the Officers"), and the Village of Bolingbrook pursuant to 42 U.S.C. § 1983 alleging damages as a result of the Officers' response to an emergency situation at the Espinoza's household. Ricardo's excessive force claim,[2] and Rosa's state law claim on behalf of her daughter Natalie for intentional infliction of emotional distress (Count V) are no longer before the Court.[3] Remaining are Rosa's Fourth Amendment warrantless search claim (Count I), Rosa and Erika's false arrest claims (Counts II and IV), Rosa's excessive force claim (Count III), and Rosa's state indemnity claim on behalf of her daughter Natalie against the Village of Bolingbrook (Count VI). (Dkt. 76, at 4-9.) The Officers now move for summary judgment on Rosa's first claim alleging a violation of the Fourth Amendment for a warrantless search of her

---

[1] Rosa files on her own behalf and as the Mother and next friend of Natalie Espinoza, but for the purposes of this opinion the Court refers to Rosa Espinoza as the sole Plaintiff because the underlying motion concerns only her claim.
[2] The Court consolidated this case with Ricardo's case (1:15-cv-11531) (Dkt. 51), however the Court then granted a motion to voluntary non-suit. (Dkt. 74.)
[3] The parties settled the claims brought on behalf of Rosa's minor daughter Natalie Espinoza. (Dkt. 62; Dkt. 65.)

1

home against Sergeant Talbot and Officers O'Hara, Gruben, Kiklas, and Tucker.[4] For the following reasons, the Court denies the Officers' Motion for Summary Judgment. (Dkt. 79.)

## BACKGROUND

The parties do not dispute the following facts unless otherwise noted.[5]

I. **Events prior to the police search/"sweep"**

On December 24, 2014, Juan Espinoza Senior ("Juan Senior") and his wife Rosa hosted a family Christmas party at their home in Bolingbrook, Illinois. (Def. SOF, ¶ 1.)[6] Family members attending the party included the Espinoza children: Erika, Ricardo, Juan Espinoza, Jr. ("Juan Junior"), Natalie Espinoza ("Natalie"), and Rosa's sister, Reyna Markiewicz ("Reyna"), with her two adult daughters Jessica Markiewicz ("Jessica") and Jennifer Markiewicz ("Jennifer"). (*Id*. ¶¶ 3-4.) At some point in the evening, Ricardo, who gets aggressive when he drinks, and Juan Junior - both of whom started drinking around 7:30 or 8:00 p.m. - began wrestling, which turned into throwing punches, and ultimately turned into a serious altercation. (*Id*. ¶¶ 8-9, 11-14.) The fight aroused fear among other family members causing Erika, Natalie, Jennifer and Jessica to lock themselves into an upstairs bedroom out of fear for their safety. (*Id*. ¶¶ 16-19.) Juan Senior also became involved in the skirmish while attempting to break up the fight between his two sons. (*Id*. ¶ 21.)

---

[4] For the purpose of this opinion, the Officers refer only to the named individuals relevant to Rosa's Fourth Amendment claim (Count I) and to no other Defendants.
[5] Plaintiff's Response to Defendants' Rule 56.1 Statement of Undisputed Material Facts in Support of Motion for Summary Judgment only disputes one paragraph; as such, all other statements in Defendants Rule 56.1 Statement are deemed admitted. *See Smith v. Lamz*, 321 F.3d 680, 684 (7th Cir. 2003) (a party's failure to respond to statements of undisputed facts serves as an admission of those facts).
[6] The following abbreviations apply to the Background section: "Pl. SOF" refers to Dkt. 84, Rosa's Statement of Facts Requiring Denial of Defendant's Motion for Summary Judgment; "Def. SOF" refers to Dkt. 81, the Officers' Rule 56.1 State of Undisputed Material Facts in Support of their Motion for Summary Judgment on Count I of the Second Amended Complaint; "Pl. Resp." refers to Dkt. 83, Rosa's Response to Defendants 56.1 State of Undisputed Material Facts in Support of Motion for Summary Judgment; and "Def. Resp." refers to the Officers' Response to Plaintiffs' Statement of Facts Requiring Denial of Defendants' Motion for Summary Judgment.

Eventually, one of the family members called 911 during which a "lengthy" conversation between Erika and the 911-dispatcher captured the chaos and severity of the altercation. (*Id*. ¶¶ 20-22.) Officers Joseph Cassidy and Richard Burdett were the first police officers to arrive on the scene, followed by Sergeant Talbot, and then Officers Stepien, Kiklas, O'Hara, Tucker and Gruben shortly thereafter in part due to "scream[s] for help over the radio, [and] yell[s] for more people" to respond. (*Id*. ¶¶ 23-25.) Shortly after arriving, the police took Ricardo, Juan Senior and Juan Junior into custody. (*Id*.)

## II. The "protective sweep" or search of the Espinoza's home

After securing Ricardo, Juan Senior and Juan Junior, several officers conducted a protective sweep of the home because "they did not know what happened before they arrived on the scene and they wanted to make sure the house was safe and no one else in the house was injured or hurt."[7] (*Id*. ¶ 26.) Officers O'Hara and Tucker cleared the second floor of the residence, which included sending Natalie and another juvenile back downstairs to the first floor. (Pl. SOF, ¶¶ 1-3.) During the events on the second floor, Officer Stepien had the locked door to the basement "pinned" or guarded, so that no person could enter or exit the basement. (*Id*. ¶¶ 7-9.)

Upon returning from the second floor, Officer Tucker used a utility knife to unlock the basement door and proceeded down into the basement.[8] Officer Tucker spent five minutes looking around in the unfinished basement, which included a Bedroom set-up with a mattress

---

[7] Rosa disputes the purpose of the "protective sweep." She alternatively submits that the Officers' purpose for going through the house was to search for evidence despite having already taken suspects into custody. (Pl. Resp. ¶ 32.)
[8] The number of Officers, timing, and method for searching the basement are disputed. Rosa claims that "all" of the Officers went to clear the basement, while the Officers admit to the basement being a part of the protective sweep, but that only Officers Gruben and Tucker went down at first. (Def. Resp., ¶ 4.)

3

and a TV. (*Id.* ¶6; Def. Resp., ¶ 13.)[9] At some point in time Officers Tucker, Gruben, Stepien, Kiklas and Sergeant Talbot were also in the basement. (Def. Resp. ¶ 10.) During Tucker's time in the basement, he searched under the bed and also discovered a shoebox and a bag containing narcotics near a sofa.[10] Tucker returned to the first floor and informed Sergeant Talbot what he observed, which prompted Talbot to head into the basement to look around as well. (Pl. SOF, ¶ 16.) Ultimately Juan Senior and Juan Junior both pled guilty to battery, and Ricardo pled guilty to resisting a police officer.[11] (Def. SOF, ¶¶ 50-52.)

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is material depends on the underlying substantive law. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citations omitted). "A 'genuine issue' exists with respect to any such material fact, and summary judgment is therefore inappropriate, when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681 (7th Cir. 2014 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). On the other hand, "where the factual record taken as a whole could *not* lead a rational trier of fact to find for the nonmoving party, there is nothing for a jury to do." *Bunn*, 753 F.3d at 682 (citing

---

[9] The parties dispute the scope and purpose of Officer Tucker's time in the basement. Rosa states that Officer Tucker's intent was to "search" the basement, while the Officers admit only that Tucker spent five minutes in the basement.

[10] Tuckers actions regarding the discovery of the shoebox with narcotics are also disputed, with Rosa arguing that he "reached inside the shoebox and the bag and found drugs," while the Officers contend the drugs were "in plain view" near the sofa. (Pl. SOF ¶ 15; Def. Resp. ¶15.)

[11] The Complaint alleges additional arrests and actions by the Bolingbrook police that are not discussed by either party in their pleadings or responses in support or opposition to summary judgment, and so those facts are not included here for the purpose of ruling on this motion.

*Anderson*, 477 U.S. at 255); *see also Kvapil v. Chippewa County, Wis.*, 752 F.3d 708, 712 (7th Cir. 2014).

## DISCUSSION

The Officers move for summary judgment on Rosa's Fourth Amendment unlawful search claim (Count I), arguing that the search conducted after the arrest of Ricardo and Juan Junior qualified as an exception to the warrant requirement as a protective sweep for safety purposes. In the alternative, the Officers assert that even if the Court finds the search went beyond the scope of a protective sweep it was a lawful search incident to arrest. The Court needn't delve into this analytical distinction between a protective sweep and a lawful search because there are genuine disputes of material fact surrounding the police conduct as a general matter requiring a credibility determination by a jury.

Generally, warrantless searches and seizures within a home violate the Fourth Amendment. *Kentucky v. King*, 563 U.S. 452, 459 (2011); *see also U.S. v. Starnes*, 741 F.3d 804, 807 (7th Cir. 2013). This presumption is subject to exceptions including protective sweeps. *U.S. v Starnes*, 741 F.3d 804, 807 (7th Cir. 2013). "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325, 327 (1990); *see also U.S. v. Burrows*, 48 F.3d 1011, 1015 (7th Cir. 1995).

Applied here, the crux of the factual dispute turns on the purpose, length, and scope of the basement search. The Officers arrived to "a total state of pandemonium" after responding to an "all-hands" 911 call placed from the Espinoza household. (Dkt. 81, ¶¶ 20-22, 25.) After arresting the suspects who were the subject of the initial response, the Officers searched both the

second floor and basement of the household in order to determine whether any other threats or victims remained. (*Id*. ¶ 26.) Rosa claims that the search of the basement was unnecessary because the suspects who were the object of the 911 call were already in custody. (Dkt. 85, at 3-4.) As noted, Rosa claims the Officer's search of the basement involved an initial search by Officers Tucker and Gruben, followed by a further inspection by Sergeant Talbot and Officers Stepien, and Kiklas, (*Id*. at 5); whereas, the officers assert that the volatile situation required them to search the basement not only for a potential offender but also for victims. Two of the women in the house had already locked themselves behind a bedroom door for safety and only came out when the officers calmed the situation, (Dkt. 81, ¶¶ 44-45), so the officers assert that it was reasonable for them to also be concerned that others might be locked in the basement for safety. The competing versions of the actions of the officers, the amount of time spent in the basement, and the number of officers and timing of their entry are all material to the question of whether the search can be deemed a protective sweep. Given that a protective sweep concerns officer and public safety, *see Starnes*, 741 F.3d at 807, the issue of whether the search of the basement exceeded the scope of a protective sweep turns on whether the officers involved "possessed a reasonable belief based on specific and articulable facts … warrant[ing] the officer[s] in believing that the area swept harbored an individual posing a danger to the officer[s] or others," and also whether the search lasted "no longer than is necessary to dispel the reasonable suspicion of danger." *Id.* at 808 (quoting *Buie*, 494 U.S. at 327; *see also U.S. v. Tapia*, 610 F.3d 505, 510 (7th Cir. 2013). A jury will need to hear all of the facts of the situation and judge the credibility of the witnesses to determine whether that reasonable belief was held.

The officers also say that exigent circumstances existed to justify the warrantless search because the officers also reasonably believed based on the circumstances that individuals in the

6

home may be in fear of safety from the offenders. When officers reasonably fear for the safety of someone inside the premises, exigent circumstances exist justifying their entry. *See United States v. Jenkins*, 329 F.3d 579, 581 (7th Cir. 2003). In such a situation, Defendants contend, the Supreme Court stated in *Mincey*, "the need to protect or preserve life or avoid serious injury is justification for what would otherwise be illegal absent an exigency or emergency." (Dkt. 88, at 3) (citing *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). The quote, however, is actually from *Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963) and is repeated in *Mincey* after the Court rejected the concept that the emergency in *Mincey* justified the officers' search of an apartment. In fact, in *Mincey,* the Court noted that a warrantless search must be "strictly circumscribed by the exigencies which justify its initiation," *Mincey*, 437 U.S. at 393_ (citing *Terry v. Ohio*, 392 U.S. 1, 25-26 (1978), and held that since the persons in Mincey's apartment had been located before the investigating officers arrived who then searched by "opening drawers and ripping up carpets," their search could "hardly be rationalized in terms of the legitimate concerns that justify an emergency search." *Mincey,* at 393. Again, the jury will need to hear all of the facts and make credibility determinations in order to resolve the material disputed facts, making a ruling on summary judgment inappropriate. *U.S. v. Cyphers*, 553 F.2d 1064, 1070 (7th Cir. 1977).

As such, the purpose and scope of the of the Officers' search of the basement after the arrest of Ricardo, Juan Junior and Juan Senior turns on the statements in the record from the Officers themselves and testimony from other available witnesses such as members of the Espinoza family. The parties clearly dispute many of the factual assertions made about how and for what reason the search of the basement occurred. These factual credibility determinations are

not capable of resolution by the Court on a motion for summary judgment. *United States v. Mejia*, 909 F.2d 242, 245 (7th Cir. 1990).

## **CONCLUSION**

For the reasons explained therein, the Court denies Sergeant Talbot and Officers O'Hara, Gruben, Kiklas and Tucker's motion for summary judgment and holds that the issue of whether the protective sweep was within the scope of the Fourth Amendment's search exceptions is one for the jury. (Dkt. 79.)

_____
Hon Virginia M. Kendall
United States District Judge

Date: September 19, 2017